**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF TENNESSEE**
**AT GREENEVILLE**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Case No. 2:16-CR-103** |
| ) | **JUDGE GREER** |
| **MATTHEW HARRISON MARTLAND** ) | |

## REPLY TO UNITED STATES' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE INDICTMENT ON THE BASIS OF PROCEDURAL AND CONSITUTIONAL INSUFFICIENCIES AND FAILURE TO STATE AN OFFENSE

The Defendant, MATTHEW HARRISON MARTLAND, by and through counsel, respectfully replies to the government's omnibus Response (Doc. 116) in Opposition to Defendants' Motions to Dismiss the Indictment on the Basis of Procedural and Constitutional Deficiencies and Failures to State Offenses (Docs. 72, 73, and 84).

## I.      INTRODUCTION

The government is prosecuting the defendants for multiple alleged violations of fraud that are premised on alleged violations of the Buy American Act, 41 U.S.C. §§ 8301 *et. seq*., Trade Agreements Act, 19 U.S.C. § 2511, and Berry Amendment, 10 U.S.C. § 3533a - laws that govern the United States government's ability to purchase foreign-made items and establish a domestic preference for the purchase of certain items. Though not specifically referenced, the Superseding Indictment also alleges that the defendants violated Federal Trade Commission labeling laws. *See* 15 U.S.C. § 45(a). The Superseding Indictment misstates the domestic preference laws and fails to include essential elements of these vague statutes that are derived from enabling regulations and interpreting authority.

The government argues that it has not based the charged offenses on underlying violations of the domestic preference and product labeling laws, but does not address the obvious truth that

1

without a violation of these laws and their interpreting regulations, there would be no fraud. If the government is correct, the numerous references in the Superseding Indictment to the domestic preference and product labeling laws are irrelevant and prejudicial surplusage.

The Superseding Indictment inaccurately describes the domestic preference and labeling laws as establishing the bright-line rule that a military boot with an upper that is foreign made but has a military-grade sole domestically manufactured onto the upper as a finished product can never be legally sold as American made or compliant with domestic preference laws. In its Response, the government fails to cite authority that supports such a reading.

A review of the essential elements of the domestic preference laws contained in the statutes, regulations, and interpreting authority reveals that the facts alleged in the Superseding Indictment do not constitute illegal conduct. The government relies on bare legal conclusions and inaccurate statements of law in the Superseding Indictment that Mr. Martland's conduct was illegal, and all counts must be dismissed for failure to state an offense.

The Superseding Indictment must also be dismissed for failing to state an offense because the government bases an essential element of fraud – scheme to defraud, on allegations that Mr. Martland schemed to defraud civilian purchasers in violation of domestic preference laws which their very definition, the domestic preference laws do not apply to civilian sales, and the government's response is effectively non-responsive to the issue raised by that separate motion to dismiss (Doc. 84).

## II.   THE CHARGED OFFENSES ARE PREDICATED ON VIOLATIONS OF THE DOMESTIC PREFERENCE AND PRODUCT LABELING LAWS.

Supreme Court and Sixth Circuit authority are clear that the Fifth and Sixth Amendments to the Constitution require all elements necessary to the conviction and punishment of the

2

defendant, and the essential facts to support those elements, be charged in an indictment and proven to a jury beyond a reasonable doubt. *See* Def's Mot. to Dismiss (Doc. 73) at p. 3-5.

As charged in the Superseding Indictment, in order for the government to prove the essential elements of wire fraud – intent, a scheme to defraud, and materiality, and the essential elements of smuggling – that a product was imported contrary to law, there must have been a violation of domestic preference or product labeling laws – otherwise, there would be no illegal and fraudulent conduct.

Despite this obvious predicate to the criminal charges, the government asserts that has not based the charges in the Superseding Indictment upon alleged violations of domestic preference and product labeling laws, and therefore was not required to include in the Superseding Indictment the specific regulations and provisions of those laws that were allegedly violated. *See* Government Resp. (Doc. 116) at p. 9-10 ("The superseding indictment does not attempt to criminalize violations of a civil regulatory scheme; rather, it charges defendants with scheming to defraud consumers, government contractors, and the United States Government."); *id*. at p. 12 ("[The government] has not alleged that defendants violated these laws or regulations."); *id*. at p. 20 ("However, quite plainly, this is not an FTC civil enforcement action.").

However, in other portions of its response, the government acknowledges that it must rely on the provisions of the domestic preference and product labeling laws to prove essential elements of the charged offenses. *See* Government's Resp. (Doc. 116) at p. 11 ("The Berry Amendment and the TAA [] establish the legal requirement that the government buy products that meet certain criteria. These laws help to explain *why* it was that the government agencies insisted upon representations that Wellco's products satisfied these criteria. Beyond that, the Berry Amendment and TAA (and the Federal Trade Commission's 'Made in the USA' standards) are useful for

purposes of proving defendants' intent to defraud *but are not themselves elements of the charged offenses*."); *id.* at p. 12 ("Proving specific intent in this case might require the government to introduce evidence regarding the meaning of the Berry Amendment, TAA, and 'Made in the USA' standards, as well of evidence of defendants' knowledge of these statutes, regulations, and standards."); *id.* at p. 20 ("As defendants well know, and the evidence at trial will show, the Chinese-made Wellco boot models listed in the indictment were certainly not "**all or virtually all" made in the United States**") (quoting FTC legal standard for marketing product as "Made in USA"); *see also* Government's Response in Opposition to Defendants' Motion for Bill of Particulars (Doc. 108) at p. 3, fn. 2, 3 (clarifying that the language in the Superseding Indictment that boots were "substantially made in China" and that "only soles were affixed in the United States" is an allegation that the boots did not comply with the Berry Amendment or TAA); Superseding Indictment (Doc. 36) at p. 10, paragraph 31 (stating allegation that as part of the "scheme and artifice to defraud", the defendants certified that Wellco boots "complied with the applicable domestic content restrictions, to include, but not limited to, the TAA and that Berry Amendment.").

The government argues that the Superseding Indictment is sufficient because it contains the bare legal assertions constituting the elements of the wire fraud statute. *See* Government's Resp. at p. 11-12 ("The scheme included various material misrepresentations and concealment of material facts…[f]urther, the indictment alleges defendants possessed the intent to defraud…. As such, the superseding indictment sufficiently sets forth the elements of the defendants' crimes."). The government also argues that Count Eleven is sufficient, because it "tracks the language of a specific statutory provision violated, 19 U.S.C. §1304." Government's Resp. (Doc. 116) at p. 24. The government fails to mention that the Superseding Indictment does not cite to 19 U.S.C. §

4

1304, but instead only makes the vague assertion that the boots were imported "contrary to law." *See* Superseding Indictment (Doc. 36) at p. 23.

The government misses the point. The essential elements of the wire fraud and smuggling statutes are predicated upon violations of the domestic preference and product labeling laws – without violations of these underlying laws and their interpreting regulations and decisions, there is no intent, scheme to defraud, or materiality, nor were the boots imported contrary to law. Accordingly, the Superseding Indictment must reference the specific provisions and regulations of the domestic preference and product labeling laws that are allegedly violated, and must provide facts specific to support the alleged violations of those laws.

The Superseding Indictment contains only vague citations to the Buy American Act, Trade Agreements Act, and Berry Amendment, and provides no citation at all the Federal Trade Commission product labeling laws, or the complex regulations and decisions that interpret the scope of the domestic preference laws. These vague references do not satisfy the constitutional and procedural requirements of the Fifth and Sixth Amendments and Fed. R. Crim. P. 7(c).

III. **THE GOVERNMENT INACCURATELY DESCRIBES THE DOMESTIC PREFERNCE LAWS AS BRIGHT-LINE TESTS; UNDER THE ACTUAL STANDARDS, THE FACTS ALLEGED IN THE SUPERSEDING INDICMENT DO NOT CLEARLY CONSTITUTE OFFENSES.**

   A. **The government attempts to distort the plain language of the Berry Amendment into an illogical test requiring that products must be grown, reprocessed, reused *and* produced in the United States before being sold as Berry compliant.**

As discussed more fully in Mr. Martland's motions and supporting memoranda to Dismiss (Doc. 72, 73, 79, 80), the Berry Amendment, 10 U.S.C. § 3533a, provides that an item is "Berry Compliant" if it is "grown, reprocessed, reused, or produced" in the United States. These terms are not defined by statute, and the interpreting regulations and decisions provide little assistance.

5

The government argues that the word "or" in the Berry Amendment should be construed in the conjunctive to satisfy congressional intent that "'clothing's raw fibers and each successive stage of manufacture' are American. Government's Resp. (Doc. 116) at 13 (citing *Nat'l Graphics, Inc.*, 49 Comp. Gen. 606, 1970 U.S. Comp. Gen. LEXIS 185 (Comp. Gen. Mar. 19, 1970).

As an initial matter, the government's proposed reading is illogical. According to the government, the Berry Amendment should be read to say, "funds appropriated or otherwise available to the Department of Defense may not be used for the procurement of an item described in subsection (b) if the item is not grown, reprocessed, reused, *and* produced in the United States." In the context of the Berry Amendment, clothing is defined to be: "clothing and the materials and components thereof, other than sensors, electronics, or other items added to, and not normally associated with, clothing (and the materials and components thereof)."

Under the government's proposed reading of the statute, Wellco could not certify boots as Berry compliant unless it (1) grew all of the materials and components thereof in the United States, (2) reprocessed, (3) reused, *and* (4) produced all components of Wellco boots in the United States. Under the government's reading, a Wellco boot would not be compliant with the Berry Amendment, until it was reprocessed *and* reused *and* produced before sale to the United States government.

The government claims that legislative intent requires such a reading of the Berry Amendment, and in support cites to *Southern Packaging & Storage Co. v. United States*, 588 F.Supp. 532, 547-548 (D.S.C. Feb. 6, 1984) and *Nat'l Graphics, Inc.*, 49 Comp. Gen. 606, 1970 U.S. Comp. Gen. LEXIS 185 (Comp. Gen. Mar. 19, 1970). *Southern Packaging & Storage Co.* addressed whether food items could be grown domestically, then packaged in a foreign country and still comply with the provisions of the Berry Amendment. 588 F. Supp. at 548. Citing *Nat'l*

6

*Graphics, Inc.*, the *Southern Packaging & Storage Co.* court determined that the language "No part of any appropriation…shall be available for the procurement of any article of food…not grown, reprocessed, reused, or produced in the United States, should be read in the conjunctive, to require that food grown in the United States must also be produced in the United States. 588 F. Supp. at 548 (ellipses in original).

The court did not explain how "repurposed" and "reused" can be read conjunctively with "grown" and "produced." *See id*. at 547-49. The court only stated that:

> "[a]s written, 'or' in the negatively phrased Appropriation Act restriction simply recognizes that there are two types of usable food products -- those which are immediately usable without need of processing (*e.g*. fruit) and those which are manufactured or processed in order to make them usable (*e.g*. beef stew). For the former category, it is sufficient to grow the desired food item domestically and there is no further requirement to process the item needlessly. Manufactured items, however, must be *produced* (i.e. manufactured) in the United States.

*Id*. at 548.

In *Nat'l Graphics, Inc.*, the Comptroller General reached a similar conclusion without reconciling the presence of "repurposed" and "reused" in the Berry Amendment. With little analysis, the decision stated:

> Considering first the words "grown, reprocessed, reused, or produced in the United States," in the statutory restriction, we are mindful that the word "or" ordinarily is construed as denoting an alternative. However, reference to the legislative history of the Department of Defense Appropriation Act, 1953, 66 Stat. 517, in which the specific reference to cotton and wool and the words "reprocesses" and "reused" were first included in the restriction, clearly shows that the intent of the Congress was that any article of cotton (or wool) would be considered "American" only when the origin of the raw fiber, *as well as each successive stage of manufacture,* is domestic. *See Decision of the Comptroller Gen*., B-110974, 1952 U.S. Comp. Gen. LEXIS 625 (Comp. Gen. Sept. 5, 1952).

49 Comp. Gen. 606, 1970 U.S. Comp. Gen. LEXIS 185, at *10 (Comp. Gen. Mar. 19, 1970).

Although *Nat'l Graphics, Inc.,* and *Southern Packaging & Storage Co.*, claim to base their conclusions on legislative intent, a closer inspection reveals that the Berry Amendment was

7

enacted to plug a loophole in the Buy American Act, and that the inclusion of the terms "reprocessed" and "reused" created alternative methods of compliance with the Amendment. Although interpreting regulations have since expanded the scope of the Berry Amendment to cover other items, such as food, those regulations have not altered the legislative intent and plain language of the Amendment.

In a 1952 decision, issued the year after the Berry Amendment became law, the Comptroller General referred to a letter from the Deputy Secretary of Defense concerning interpretation of the Berry Amendment and offered guidance on the interpretation of the Act based on the legislature's intent. The Comptroller General stated:

> It is pointed out in the Deputy Secretary's letter that provisions relating specifically to cotton and wool, including the words "reprocessed" and "reused," were added to the customary restriction (heretofore simple "clothing") for the first time this year. He assumes, therefore, that "where the cotton or wool being procured is contained in 'manufactured articles,' the section applies only to the procurement of manufactured articles which, like fabrics, cloth 'materials' and 'clothing' itself, contain recognizable forms of cotton or wool in significant amounts." Since the legislative history clearly indicates that a basic purpose of the language was to "'plug up a loophole in the Buy-American Act' by requiring that, contrary to PAR. 6.103.1 of the Armed Services Procurement Regulation, cotton and wool will only be considered 'American' when the origin of the raw fibre, as well as each successive stage of manufacture, is domestic," *the Department proposes to apply the restriction accordingly, "except that where reprocessed or reused cotton or wool is involved it will only be required that the reprocessing, i.e., garnetting, be performed domestically.*"
>
> *In response to advice as to whether this office has any objection to such application, there is perceived none.*

*Decision of the Comptroller General*, B-110974, 1952 U.S. Comp. Gen. LEXIS 625, at *2-3

(Comp. Gen. Sept. 5, 1952) (emphasis added). The decision goes on to note that:

> It does not appear that anyone participating in consideration of the legislation expressed an understanding of its purpose differing from that outlined by Representative Berry, during the Senate hearings, when he stated that "All this Amendment does is just say that American wool shall be covered by the Buy

8

American Act and the "Buy-American" provision of the bill." Senate Hearings, page 1421.

*Id*. at p. *9.

Despite the government's claimed reliance on legislative intent, the government provides no basis to overcome the strong presumption that Congress intended that "or" should be given its plain meaning in the Berry Amendment. *See Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) ("To read the next clause, following the word 'or,' as somehow repeating that requirement, even while using different words, is to disregard what 'or' customarily means. As we have recognized, that term's 'ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings.'") (internal citation omitted); *United States v. Martin*, 438 F.3d 621, 630-31 (6th Cir. 2006) ("[A]s this court recently explained at length, 'dictionary definitions, legal usage guides and case law compels us to start from the premises that 'and' usually does not mean 'or'.") (citing *Officemax v. United States*, 428 F.3d 583, 588 (6th Cir. 2005); 1A Norman J. Singer, Statutes and Statutory Construction § 21.14 at 183-86 (6th ed. 2000) ("The literal meaning of ['and' and 'or'] should be followed *unless it renders the statute inoperable or the meaning becomes questionable*….The [two] words are not interchangeable, and their strict meaning should be followed when their accurate reading does not render the sense of the statute confusing and there is no clear legislative intent to have the words not mean what they strictly should.") (alteration and emphasis in original)).

**B.  The government misrepresents *Uniroyal Inc. v. United States*, 3 C.I.T. 220, 542 F. Supp. 1026 (1982) as creating a bright-line rule that attaching a sole to a shoe upper is not a "substantial transformation" for the purposes of the Trade Agreements Act.**

Although the government acknowledges that the critical inquiry to determine compliance with the Trade Agreements act is whether an item is "substantially transformed" in the United

9

States, the government claims that the decision in *Uniroyal, Inc. v. United States*, 3 C.I.T. 220, 542 F. Supp. 1026 (1982), established the *rule* that manufacturing a shoe in the United States by attaching a sole to an imported upper cannot be a substantial transformation for the purposes of the Trade Agreements Act.

As discussed in Mr. Martland's Motion to Dismiss the Superseding Indictment Because the Charged Offenses are Unconstitutionally Vague (Docs. 79, 80), that is a misrepresentation of the *Uniroyal* court's holding. The *Uniroyal* court explicitly stated: "To determine whether a substantial transformation of an article has occurred for the purposes of ascertaining who is the 'ultimate purchaser,' each case must be decided on its own particular facts." *Uniroyal, Inc.*, 3 C.I.T. 220, 542 F. Supp. at 1029. *Uniroyal, Inc.* dealt with the importation of shoe uppers, but that is where the similarities to Mr. Martland's case end. In *Uniroyal, Inc.*, Uniroyal was imported finished Sperry Topsider uppers, then attaching a thin rubber sole through a simple, cheap, and quick process in the United States and selling those shoes without country of origin labels on the uppers. Wellco imported uppers, then attached a specially designed outsole to the imported upper through a specialized domestic manufacturing process that transformed the imported leather or canvas uppers into fully finished end-product military boots designed to withstand the variety of extreme conditions encountered by members of the armed services. This process is substantial transformation in light of other, more applicable interpreting regulations and decisions. *See* Def's Memorandum in Support of Motion to Dismiss Superseding Indictment on the Basis of Procedural and Constitutional Insufficiencies and Failure to State an Offense (Doc. 73) at p. 9-12.

**C.** **The government opposes Mr. Martland's Motion to Dismiss by claiming that "the evidence at trial" will show that Wellco's conduct violated Federal Trade Commission standards, and was therefore fraudulent.**

Despite acknowledging earlier in its Response that "an indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true[,]" *see* Government's Resp. (Doc. 116) at p. 4 (citing *United States v. Sampson*, 371 U.S. 75, 78-79 (1962), the government attempts to save the Superseding Indictment from failing to state an offense by claiming that "the evidence at trial will show [that] the Chinese-made Wellco boot models listed in the indictment" were not compliant with Federal Trade Commission labeling laws. *See id*. at p. 20. The government makes no claim that the facts alleged on the face of Superseding Indictment state a violation of Federal Trade Commission country of origin labeling laws.

**D.** **The government does not dispute that the Superseding Indictment contains no facts to support a violation of the Buy American Act.**

Although the government claims it has "made no allegation that defendants made material misrepresentations or concealed material facts related to the BAA's implementing regulations' requirement[s,]" Government's Resp. (Doc. 116) at p. 12, n. 2, the Superseding Indictment alleges otherwise. The Superseding Indictment contains the allegation that "[i]t was further part of the scheme or artifice to defraud that the defendants…signed and submitted certifications…that boots supplied by Wellco to the United States government complied with the applicable domestic content restrictions, *to include, but not limited to*, the TAA and the Berry Amendment." Superseding Indictment (Doc. 36) at p. 10 (emphasis added); *see also id.* at p. 4-5, paragraph 14 (vaguely setting forth the Buy American Act as a domestic content restriction law). Material elements of the charges in the Superseding Indictment are predicated on alleged violations of the Buy American Act. The government does not dispute that the Superseding Indictment lacks facts sufficient to support those charges.

11

The government has predicated all counts of the Superseding Indictment on alleged violations of the domestic preference and country of origin labeling laws, but has not stated facts sufficient to constitute a violation of these laws – instead it only makes conclusory statements of law regarding the country of origin of the boots. Accordingly, all charges of the Superseding Indictment must be dismissed for failure to state on offense.

## IV. THE SUPERSEDING INDICTMENT FAILS TO STATE AN OFFENSE BECAUSE IT ALLEGES A SCHEME TO DEFRAUD BASED ON VIOLATIONS OF LAWS THAT DO NOT APPLY TO CIVILIAN PURCHASERS.

The government argues that the Superseding Indictment does not allege a scheme to defraud civilian purchasers by representing products as compliant with domestic preference laws applicable only to government purchasers because the scheme to defraud "as alleged, consisted of three general types of false representations." Government's Resp. (Doc. 116) at p. 25 (citing Superseding Indictment (Doc. 36) at p. 7). This after the fact attempt at clarification of the Superseding Indictment by the government does not address the issues raised by Mr. Martland's Motion to Dismiss (Doc. 84).

## V. CONCLUSION

For these, and other reasons set forth more fully in Mr. Martland's Motions to Dismiss on the Basis of Procedural and Constitutional Deficiencies and Failures to State Offenses (Docs. 72, 73, 84), the Superseding Indictment must be dismissed for being procedurally and constitutionally insufficient and failing to state criminal offenses.

12

Respectfully submitted this 20th day of November, 2017, by:

**STEPHEN ROSS JOHNSON [BPR #022140]**
**WADE V. DAVIES [BPR # 016052]**
*Ritchie, Dillard, Davies & Johnson, P.C.*
606 W. Main Street, Suite 300
Knoxville, TN 37902
(865) 637-0661
johnson@rddjlaw.com
*Counsel for Matthew Harrison Martland*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

STEPHEN ROSS JOHNSON